UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RENEE M.**[1] ,

        **Plaintiff,**

  v.                                         Civil Action 3:23-cv-34
                                                  Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,** *et al.***,**

        **Defendant.**

**OPINION AND ORDER**

    Plaintiff, Renee M., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a Period of Disability and Disability Insurance Benefits. This matter is before the Court for consideration on Plaintiff's Statement of Errors (ECF No. 10), Defendant's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 9). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED,** and the Commissioner's decision is **AFFIRMED**.

                                            **I.    BACKGROUND**

    Plaintiff protectively filed an application for Title II period of disability and disability insurance benefits on February 20, 2019, alleging that she became disabled beginning January 1,

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

2015. Plaintiff's application was denied at the initial and reconsideration levels. An administrative law judge ("ALJ") held a telephone hearing on July 12, 2021, during which Plaintiff, represented by counsel, appeared and testified. A vocational expert also appeared and testified at the hearing. The ALJ issued an unfavorable determination on November 30, 2021, and that unfavorable determination became final on December 16, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff now seeks judicial review of the ALJ's unfavorable determination. Plaintiff asserts one contention of error: the ALJ failed to properly consider the opinion of Plaintiff's treating psychologist when determining Plaintiff's residual functional capacity. Plaintiff's contention of error lacks merit.

## II.     THE ALJ's DECISION

The ALJ issued her decision on November 30, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 15–27.) At step one of the

sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2015. (*Id.* at 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative changes thoracic spine; carpal tunnel syndrome; anxiety disorder and bipolar disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18.) At step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 4 416.967(b)except . . . [Plaintiff] can understand, remember, and carry out simple instructions; make simple work-related decisions; with occasional changes in a routine work setting but no production rate pace, such as work on an assembly line. There can be

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

   occasional interaction with co-workers, supervisors, and the public but no tandem tasks with co-workers, such as another worker upstream or downstream.[4]

(*Id.* at 21.) In determining Plaintiff's RFC, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause at least some of her alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence. (*Id.* at 23.) At step four, the ALJ relied on testimony from the VE to determine that Plaintiff was capable of performing her past relevant work as a housekeeping cleaner, as generally and actually performed. (*Id.* at 24–25.) Despite finding that Plaintiff was capable of performing her past relevant work, the ALJ proceeded to step five, and relying on testimony from the VE, made alternative findings that considering Plaintiff's age, education, work experience and RFC, there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 26–27.) Therefore, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of the ALJ's determination. (*Id.* at 27.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v.*

---

[4] Plaintiff's contention of error is limited to her mental limitations. Accordingly, the Court limits the discussion to the same.

4

*Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health and Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

Plaintiff's sole contention of error is that the ALJ erred when assessing the medical opinion of her treating psychiatrist, Dr. Mahmood Rahman. (Pl.'s Statement of Errors 9, ECF No. 10.) Specifically, Plaintiff challenges only the ALJ's analysis of the consistency factor when evaluating Dr. Rahman's opinion. (Pl.'s Statement of Errors 10–11, ECF No. 10.) That challenge lacks merit.

An ALJ must "consider all evidence" in a claimant's case record. 20 C.F.R. § 404.1545(a)(1)(3). The governing regulations[5] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). A medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in several enumerated areas. § 404.1513(a)(2) (emphasis added). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating the persuasiveness of medical opinions, an ALJ must consider these factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. § 404.1520c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. § 404.1520c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion.

---

[5] Because Plaintiff's applications were filed in 2019, they are subject to regulations that govern applications filed after March 27, 2017.

§ 404.1520c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. § 404.1520c(b)2).

Dr. Rahman, who had been Plaintiff's treating physician, completed a "Mental Impairment Questionnaire" on July 20, 2021. (R. 854–60.) That questionnaire was a check-box form on which Dr. Rahman identified that Plaintiff would be unable to meet competitive standards as to virtually all mental abilities and aptitudes needed to do either skilled or unskilled work. (*Id.* at 856–7.) Although Dr. Rahman noted that Plaintiff suffered from bipolar disorder (depressed) and panic disorder (*id.* at 854), he failed to explain the substantial limitations he checked, nor did he identify any medical/clinical findings to support his assessment. (*Id.* at 854–60.)

A medical opinion set forth on a check-box form is "weak evidence at best." *See Hernandez v. Comm'r. of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citation omitted). Courts in the district routinely find that in the absence of explanatory support or reference to objective findings, such conclusory forms lack supportability. *See, e.g.*, *Zachariah G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1600, 2022 WL 883769, at *9 (S.D. Ohio March 25, 2022), *report and recommendation adopted*, 2022 WL 2339444 (S.D. Ohio June 29, 2022) ("[B]ecause the statement was in the form of a checklist, without any additional comments or annotation, it lacked any supporting explanations or citations to relevant medical evidence, which are central to the supportability factor."); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-cv-01290, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) ("Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion.") (citing cases). Indeed, they are so lacking, they can be discounted even where an ALJ has not expressly stated that they are unpersuasive because they are check-boxes. *Laney*, 2022 WL 2176539, at *6

n. 2 (citing *Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan. 12, 2018)).

>In discussing Dr. Rahman's opinion, the ALJ wrote:
>
>Dr. Rahman did not support his opinion with analysis or explanation and his opinion is not consistent with either his treatment records or the remaining evidence. For example, during treatment Dr. Rahman described the claimant as alert, oriented, and pleasant, with minimal or no abnormalities noted (*e.g.* Exhibit 10F). Dr. Rahman's opinion is also not consistent with reported activities, including caring for children ages 1, 2, and 4 at the time the function report was completed, preparing simple meals, household tasks with breaks, visiting with adult daughter, and managing other daily activities. While the record does reflect multiple work-related limitations, the degree of limitation expressed by Dr. Rahman in his opinion is not consistent with the remaining record.

(*Id.* at 51.)

Plaintiff complains that the ALJ conducted a "legally deficient analysis" in addressing the consistency factor with regard to Dr. Rahman's opinion, arguing that the ALJ limited her consistency analysis to determining that Dr. Rahman's opined limitations were inconsistent with Plaintiff's reported daily activities. (Pl's Statement of Errors 11 (ECF No. 10 ).) That is incorrect. Although the ALJ did specifically note that Dr. Rahman's opinions were inconsistent with Plaintiff's daily activities, the ALJ then explained that "the degree of limitation expressed by Dr. Rahman in his opinion *is not consistent with the remaining record.*" (R. 51 (emphasis added).)

The ALJ's decision must be read as a whole. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020), and the ALJ's decision provides a lengthy discussion of the evidence on Plaintiff's mental limitations in the record. That evidence, which includes a number of medical opinions in addition to Dr. Rahman's, provides substantial evidence for her conclusion that Dr. Rahman's opinion is inconsistent with the record. The ALJ first addressed the severity of Plaintiff's mental health impairments at step two, when the ALJ considered each

8

of the four "paragraph B" criteria[6] of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. In discussing the paragraph B criteria, the ALJ first found that:

> In understanding, remembering or applying information, the claimant has a moderate limitation. This area of mental functioning refers to the abilities to learn, recall and use information to perform work activities. There is no indication in the record that the claimant is unable to perform simple maintenance, prepare meals, pay bills, go to doctor's appointments, take medications, take public transportation, shop, drive, read or play games. On examination, she appeared to be of average intelligence. During her clinical evaluation on July 17, 2019, she was able to correctly recall eight numbers forward and five backwards. The claimant drove herself to the mental status examination with Gordon A. Harris, Ph.D. . . . The [Plaintiff] reported that she could handle her own finances.

(*Id.* at 19–20.) As to Plaintiff's ability to interact with others, the ALJ concluded that Plaintiff had a moderate limitation, writing "there is no indication in the record that the [Plaintiff] is unable to deal appropriately with authority or live with others." (*Id.*) As to Plaintiff's ability to concentrate, persist or maintain pace, the ALJ concluded that Plaintiff had only a moderate limitation, explaining:

> During her mental status examination, the [Plaintiff] attended and concentrated well on a digit span task. She was persistent on a serial 7's task, working slowly, but completing the task. The claimant made 3 errors in the process. Her pace on this task was in contrast to her verbalizations, which tended to be rapid. Thus, her attention and concentration appeared somewhat limited (Exhibit 3F/5). There is no indication in the record that the claimant is unable to drive, watch television, read, play games, manage funds, use the internet, handle her own medical care and attend to her personal grooming. Therefore, I find moderate limitation in this area of functioning.

(*Id.*) The ALJ likewise found moderate limitations in Plaintiff's ability to adapt and manage herself, noting:

> There is no indication in the record that the claimant is unable to handle self-care and personal hygiene, care for pets, care for children and get along with caregivers.

---

[6] The four aspects of mental functioning are known as the "paragraph B criteria" because they appear in paragraph B of many Listings involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b).

9

> Nonetheless, Gordon A. Harris, Ph.D. opined that the claimant's reported anxiety would likely lead to difficulties dealing with supervisors and coworkers (Exhibit 3F/6). I find moderate restrictions in this area of functioning.

(*Id.*)

In her RFC determination, the ALJ addressed the medical opinions in the record on Plaintiff's mental health limitations. The ALJ first discussed the opinion of consultative examiner Dr. Harris.

> [Plaintiff] presented to Gordon A. Harris, Ph.D. for a July 17, 2019 mental status examination. She reported depression, suicidal thoughts, crying spells, auditory hallucinations and significant anxiety. After talking to a counselor, her symptoms worsen. She sees a psychiatrist once per month. The claimant admitted that she often cancels or is a no show to her psychiatrist or therapy appointments. Nonetheless, she was taking Depakote and two other pills. The claimant was also taking Adderall, which helped her focus, because she could not control her mind. She reported mental health problems dating back to age 18. As of the consultative examination date, she rated her depression as a 10. The claimant reported having suicidal thoughts. She has not had homicidal ideation. The claimant relayed having significant anxiety (Exhibit 3F/3). Upon examination, the claimant had a generally logical and coherent thought process. However, she did ramble and sometimes needed to be refocused. Her mood and affect were anxious. The claimant noted that she heard people say things that they did not say. When washing dishes, she reported hearing a child scream (Exhibit 3F/4).
>
> Her mental status examination further revealed normal rate, rhythm, volume and quantity of speech. Her thought processes were generally logical and coherent, although [Plaintiff] tended to ramble. She was anxious and exhibited a broad range of affect. However, her eye contact was good and psychomotor activity was normal (Exhibit 3F/4). Dr. Gordon noted that [Plaintiff's] thought process did not exhibit paranoid, delusional or obsessive thought processes.
>
> The finding of consultative examiner, Dr. Gordon is as follows: although the claimant did not have any difficulty understanding instructions, she did exhibit some difficulty with long term memory. Thus, her ability to carry out instructions would appear to be impaired by her anxiety in the tasks that she is requested to perform. The claimant can attend and concentrate with the use of medication. Her anxiety would likely lead to difficulties dealing with supervisors and co-workers (Exhibit 3F/5, 6). The consultative examiner did not make abnormality findings consistent with the severity of symptoms alleged at the hearing.
>
> When [Plaintiff] presented to the field office, she was cooperative and had good recall of past events and dates. Her mood seemed rather flat, during the

10

> conversation. She seemed able to understand and comprehend things normally. These observations are noted in accordance with SSR 16-3p (Exhibit 1E).

(R. 22). The ALJ found Dr. Gordon's opinion somewhat persuasive but found that his opinion on Plaintiff's difficulty dealing with supervisors and co-workers lacking any detail about the degree of impairment, and his finding of difficulty in managing pressure at work to be insufficiently specific to provide relevant limitations in Plaintiff's RFC. (*Id.* at 24.) The ALJ noted that the "state agency consultant, Dr. Dietz" found "no more than moderate limitations in any of the paragraph b criteria of the listings" and "opined the claimant could perform simple and moderately complex tasks, with no fast pace or strict production standards." (*Id.*) Dr. Dietz opined that Plaintiff could have "[l]imited superficial contact with others but no mentoring, negotiating, instruction, supervising, diverting, or persuading others. Few changes in day to day duties, where changes are explained in advance." (*Id.*) The ALJ found Dr. Dietz opinion somewhat persuasive. (*Id.*) Likewise the ALJ found the opinion of state agency consultant Dr. Seleshi that Plaintiff "could interact with others on a brief, superficial and occasional basis" partly persuasive. (*Id.*) And the ALJ found Dr. Seleshi's opinion that Plaintiff "could tolerate a setting with predictable expectations and infrequent changes" to be persuasive. (*Id.*)

Plaintiff challenges only the ALJ's determination that the extreme mental health limitations marked off on Dr. Rahman's Mental Health Questionnaire were inconsistent with the record as whole. But that determination is supported by the substantial evidence described above, including the evidence Plaintiff's daily activities and ability to care for herself, as well as the other opinions in the record that describe only moderate levels of impairment in Plaintiff's mental functioning.

## V. CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits and that the ALJ's decision was made pursuant to proper legal standards. For the foregoing reasons, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE